N. P. WIND, *et al.*, Appellants, v. ILER & COMPANY, *et al.*

**Intoxicating Liquors:** RECOVERY OF MONEYS PAID FOR. Plaintiff lives in Ottumwa, defendant in Omaha. During several years before the passage of the "Wilson Bill" defendant sold plaintiff liquor. It was shipped at Omaha. Plaintiff paid the freight when the goods reached Ottumwa. The first sale was made by an agent of plaintiff, subject to approval. Most of the subsequent orders were by mail or wire. Plaintiff credited defendant with all liquor sold as soon as the bills arrived, with the understanding that the buyer had the right to test the liquor before accepting it, and that he should have credit for such goods as might be returned after testing, for being unsatisfactory. The seller knew that the liquor was to be sold in violation of Iowa law. *Held,* the title passed at Omaha. Sales made in Nebraska for shipment into Iowa were, before the passage of the "Wilson Bill," lawful, without reference to Iowa police regulations or the intent of the seller to aid in their violation. Drawing the bungs of the barrels to test the liquor in them, does not mingle such liquor with the general mass of Iowa property and so subject them to its police regulations. While sales made in a sister state, with intent to violate our laws, may not be enforced here, money paid upon them can not be recovered back under Code, 1550.

*Appeal from Mills District Court.*—HON. N. W. MACY, Judge.

MONDAY, JANUARY 21, 1895.

Action at law to recover money paid by plaintiff to defendants for intoxicating liquors during the years 1881, 1882, 1883, and 1884. There was a trial to a jury, and at the conclusion of plaintiff's evidence, defendants moved the court for a verdict. The motion was sustained, and verdict and judgment rendered for defendants, and plaintiff appeals.—*Affirmed.*

*E. R. Duffle, John P. Breen,* and *John Y. Stone* for appellant.

*Congdon & Hunt, James M. Woolworth,* and *Smith McPherson* for appellees.

Deemer, J.—Plaintiff is a copartnership composed of N. P. Wind and George F. Silvers, heretofore, and during the years 1881, 1882, 1883, and 1884, doing business as wholesale and retail liquor dealers in the city of Ottumwa, Iowa. Defendant Iler & Co. is a copartnership composed of the other defendants, doing a wholesale liquor business in the city of Omaha, Neb. Sometime during the latter part of the year 1881 defendants' traveling man, one Gilmore, called upon the plaintiff at their place of business in Ottumwa to induce them to order some liquors from the firm which he represented. The evidence shows without conflict that this agent had no authority to make sales. He had power to take orders, which were submitted to the defendants for their rejection or approval, and, if approved, the goods ordered were shipped to the proposed purchaser. Plaintiff gave this agent an order for some goods, which was submitted to the defendants, and by them approved, and the liquors were delivered to the railroad company for shipment to plaintiff at Ottumwa, plaintiff paying the freight thereon. An arrangement was made between the plaintiff and defendants' agent by which plaintiff might thereafter order such liquors as it desired by mail or by telegram, and in accordance with this arrangement it ordered large quantities of liquor, which it paid for through the Ottumwa banks in response to drafts made upon it for the purchase price. All liquors so paid for, except three bills, were ordered by wire or mail. It is claimed by the plaintiff that all these various sales of liquor,

amounting in number to about eighty, and in value to more than two thousand dollars, were unlawful and that they are entitled to recover all payments made thereon, under Code, section 1550, which provides that all payments made for intoxicating liquor sold in violation of our liquor law shall be held to have been received in violation of law, and against equity and good conscience, and to have been received upon a valid promise of the receiver to pay to the person furnishing such consideration the sum thereof.

The first question which arises is, were the sales made in this state? From what we have already stated it would appear that the sales were each and all made in Nebraska. But plaintiff contends that, while the defendants' agent may have had no authority to do more than take their orders for the goods, yet there is testimony tending to show that the liquors were all shipped subject to approval, and that the title to the goods did not pass until the liquors were received and tested by them. The testimony on this point is as follows: Witness George W. Silvers said, in substance, that Gilmore, the agent, said: "If the goods isn't satisfactory after you receive them, you can send them back to Omaha." And Silvers told him (Gilmore) if the goods were not as he said, they should come back. "The goods came, and we inspected them,—gauged them. We had a government gauge there,—a thermometer we called a 'tester.' We tested the goods before we paid the freight. Gilmore said, 'If you receive the order all in good shape, and the goods are satisfactory, and you need any more, and I am not around, why, send your orders in to the house, and they will be filled.'" This witness further testified that when the goods came to the depot at Ottumwa they were taken by a drayman from the freight house, and delivered at plaintiff's place of business, the drayman paying the freight in the first

instance, and afterward collecting it from the plaintiff. Witness further testified that one bill of goods which plaintiff ordered shipped to Des Moines, to a customer of plaintiff at that place, was returned, and credit asked of defendants therefor, and that defendants gave them a small discount on one of their bills.    He further said: "If they were not satisfactory, they were to be returned. That was the contract.    We never returned any from Ottumwa."    Witness Wind testified that Gilmore said: "If his goods were not as represented we had the privilege of returning them.    We told him we wanted to examine the goods after they came, and see if they suited us.    He said we had that privilege."    "We had a gauge or whisky tester that we used.    We took out the bung, and took a little out, and used the tester.    We told Mr. Gilmore our method of examining it.    He said it was satisfactory."    Witness Silvers also testified that within three or four days after giving the order the plaintiff received a bill for the goods, and entries were then made on the plaintiff's ledger of the amount of the bill.    It is an elementary proposition of law, needing no citation of authority in its support, that title passes in the sale of personal property when from all circumstances surrounding the transaction it is evident that the parties to the sale intended it to pass.    It is wholly a question of intention to be arrived at from the contract and the acts and conduct of the parties thereto.    In the absence of all stipulations and conditions in the contract, the title will be presumed to pass, where the parties live at different places, when the goods are delivered by the seller to a transportation company for carriage to the buyer, subject to the seller's lien or right of stoppage *in transitu.* This is certainly the rule where the buyer is to pay the freight.    It is also a general rule that the buyer has a right to inspect unascertained goods to determine

whether they are such as are bargained for or not. Newmark, Sales, section 252; Benjamin, Sales, (Bennett's Ed.) pp. 669-690; *Hirshhorn v. Stewart*, 49 Iowa, 418. This right of inspection, however, does not of itself postpone the passing of the title. It simply authorizes a rescission of the sale in the event the goods are not as contracted for. So that the reservation of the right to inspect the goods by the plaintiff in this case does not of itself indicate that title was not to pass until the goods were tested, for it gives to plaintiff no greater rights than they would have had under the law without such reservation.

It is claimed that by the terms of the contract the title was not to pass until the plaintiff was satisfied, after testing the liquors, that they were the kind ordered. The law has made a somewhat refined, yet no less obvious, distinction between an option to purchase if satisfactory and an option to return if not satisfactory. In the one case title will not pass until the option is determined, and in the other case the property passes at once, subject to the right to rescind and return. The former may be said to be a conditional sale, and the latter has been denominated a "sale or return." *Hunt v. Wyman*, 100 Mass. 198; *Foley v. Felrath* (Ala.), 13 South. 485; Newmark, Sales, section 310; *Buswell v. Bicknell*, 17 Me. 344; Benjamin, Sales (Bennett's Ed.), p. 569, and cases cited. It is also well settled that the rule that title does not pass so long as anything remains to be done to the goods to ascertain their value, quality, or quantity, is only applicable to cases of constructive delivery. *Bogy v. Rhodes*, 4 G. Greene, 133. Under this rule the right reserved to plaintiff, to inspect and test the goods after they came into their actual possession would not operate to postpone the transfer of

title, but merely gave them the right to rescind the contract and return the goods. See, also, in this connection, *Foley v. Felrath, supra,* and cases therein cited; 2 Kent, Comm. 496. We are satisfied from the fact that the drayman, who must be considered as plaintiff's agent, paid the freight on these liquors, took them from the carrier, and delivered them to plaintiff, and from the further fact that the plaintiff credited defendants with the liquors as soon as they received the bills for them, which was in advance of the delivery of the goods, with the understanding that they were to have credit for such as might be returned, that both parties intended title to pass when the goods were delivered to the railroad company at Omaha, Neb., for transportation to Ottumwa; and that the sale was not one on trial or on approval, or if satisfactory to plaintiff, but rather a completed sale, with an option in plaintiff to return them if they did not meet the test plaintiff proposed to give them. Our conclusions find support in the following cases: *Engs v. Priest,* 65 Iowa, 232, 21 N. W. Rep. 580; *Whitlock v. Workman,* 15 Iowa, 351; *Tegeler v. Shipman,* 33 Iowa, 194,—and are not in conflict with *Gipps Brewing Co. v. De France,* 91 Iowa, 108, 58 N. W. Rep. 1087, and *Tolman v. Johnson,* 43 Iowa, 127. The following cases from other states are directly in point: *Schlesinger v. Stratton,* 9 R. I. 578; *Mack v. Lee,* 13 R. I. 293; *Gill v. Kaufman,* 16 Kan. 571; *McCarty v. Gordon,* Id. 35; *Snider v. Koehler,* 17 Kan. 432; *Dolan v. Green,* 110 Mass. 322; *Abberger v. Marrin,* 102 Mass. 70; *Boothby v. Plaisted,* 51 N. H. 436. If the sales were made in Omaha, then they were not unlawful in such sense as that recovery can be had for money paid thereon, although there is evidence in the record that defendants' agent knew plaintiff had no permit to sell liquors in this state,—which they were at that time required to have to make lawful sales. It is no doubt

true that if a nonresident makes sales of liquors in another state to a resident of this state, for the purpose and intent of enabling the purchaser to violate the liquor laws of this state, or participates or assists in a design on the part of the purchaser to dispose of them unlawfully in this state, his complicity in the illegal scheme will prevent him from recovering the price in an action against the purchaser. *Davis v. Bronson,* 6 Iowa, 410; *Whitlock v. Workman,* 15 Iowa, 351; *Bank v. Curren,* 36 Iowa, 555. And it is also true that, while mere knowledge on the part of the vendor that the purchaser intends to violate the law may not vitiate the sale, yet it is a fact from which the jury might infer an intent to violate such law. *Tegeler v. Shipman, supra.* Such unlawful participation in the illegal design of the purchaser will defeat an action by the seller to recover the purchase price of the liquors sold, on the grounds of public policy. But will it enable the purchaser to recover the amount of payments made on the contract, under section 1550 of the Code? We think not. The sale in such case is not unlawful under this statute, for, as we have already seen, the nonresident has a perfect right to make the sale in his state, and recover the purchase price. His act is unlawful because the policy of the law forbids his participation or assistance in the violation of our laws by the purchaser of the liquors, and on the grounds of public policy he cannot recover. The statute referred to gives the purchaser the remedy of recovering back his payments when the sale is of intoxicating liquors in violation of the liquor laws of this state. It is clear, then, that if the matter had been submitted to the jury, and it had found that defendants, in making the sale in Omaha, intended thereby to enable

plaintiffs to violate the law of this state, there could be no recovery under section 1550 of the Code. It must be remembered in this connection that all purchases and payments thereon for which recovery is sought in this action were made prior to the enactment of what is known as the "Wilson Bill," and it should further be borne in mind that under the decisions of the United States Supreme Court in *Brown v. Maryland* 12 Wheat. 419; *Bowman v. Railway Co.*, 125 U. S. 465, 8 Sup. Ct. Rep. 689, 1062; and *Leisy v. Hardin*, 135 U. S. 100, 10 Sup. Ct. Rep. 681,—sales like those in question, if made in Omaha to a resident in this state, were perfectly lawful in and of themselves. See, also, *Richards v. Woodward*, 113 Mass. 285. The statutes of this state regulating and licensing the traffic in liquors therein were void, and of no effect, so far as they interfered with commerce between the states. *Lyng v. Michigan*, 10 Sup. Ct. Rep. 725. So that defendants had the right to sell their liquors for importation into this state without reference to our police regulations. The sales in and of themselves were not unlawful.

Let it be conceded, however, for the purposes of this case, that the sales of the liquor took place at Ottumwa, and that payments were made for it there. What, then, is the state of the case? Defendants insist that if this be true, then, as the sales were made in the original package in which the liquors were imported, section 1550 has no application to them, because it is a regulation of commerce between the states, and is unconstitutional under the cases from the Supreme Court of the United States before quoted. We are well satisfied that defendants' contention is correct. Indeed, it is practically conceded by the plaintiffs' counsel. But they insist that as soon as the barrels were opened for the purpose of

testing, the property became incorporated into the general mass of property in the state, and subject to the police regulations adopted to preserve the health and morals of the community. That section 1550 was adopted to restrain the traffic in intoxicants, and to aid in the general enforcement of the general liquor laws of the state, in virtue of the police power lodged in the state, cannot be doubted. And, if this be true, it is a direct restraint and interference upon trade and traffic in liquors, and, under the decisions before quoted, it is, or was prior to the enactment of the Wilson bill, unconstitutional so far as it relates to commerce between the states or the inhabitants thereof. This doctrine finds support in the cases of *State v. Coonan*, 82 Iowa, 400, 48 N. W. Rep. 921, and *State v. Corrick*, 82 Iowa, 451, 48 N. W. Rep. 808. What is said to the contrary in the case of *Connolly v. Scarr*, 72 Iowa, 223, 33 N. W. Rep. 641, which was decided prior to the case of *Leisy v. Hardin*, must be considered as overruled. It is our duty to follow the decision of the highest tribunal in this country—the final arbiter on these grave constitutional questions—without reference to the fact that there is a strong dissent to the doctrines announced by that court, which many of us think announces the better rule. The question, however, is of little importance at this time, because of the enactment of the Wilson bill, which fortunately gave to the states the right to exercise the police powers vested in them, without reference to the interference the exercise of those powers might be upon interstate commerce.

The question yet remains, did the drawing of the bung in the barrels in which the liquors were shipped into the state have the effect claimed for it by the appellant? We think not. The barrel was opened in order that a small quantity might be taken from it and tested,—not used,—in order to determine whether the

liquors would be returned or not. We do not think that the inspecting or testing of an imported article to determine whether it shall be returned has the effect to make it a part of the general mass of property in the state. Plaintiff, according to its theory, tested it to see if it would accept it, and make it its property. And if the mere act of testing made it theirs, there was no necessity for the test, because it became theirs by the act itself. We do not think they want such a rule applied in this case. In *Leisy v. Hardin, supra,* it is said: "Under our decision in *Bowman v. Railway Co., supra,* they had the right to import this beer into the state, and in the view we have expressed they had the right to sell it, *by which act alone it would be commingled with the general mass of property* within the state. Up to that point of time, we hold that, in the absence of congressional permission to do so, the state had no power to interfere by seizure." This court is committed to the doctrine that the size or form of the package has very little to do with the question we are now considering. The point has been made to turn rather upon whether the liquors themselves were imported or not than upon the form or inviolability of the package. *Collins v. Hills,* 77 Iowa, 181, 41 N. W. Rep. 571; *State v. Coonan, supra.* We are well satisfied with the conclusions reached by the lower court, and the judgment is *affirmed.*