QUEAL LUMBER COMPANY, Appellee, v. SAM ANDERSON et al., Appellants.

No. 40207.

MARCH 18, 1930.

REHEARING DENIED NOVEMBER 18, 1930.

*Stipp, Perry, Bannister, Starzinger & Little,* for appellants.

*Gillespie & Canfield,* for appellee.

MORLING, C. J.—The case was submitted on stipulation of facts. The stipulation defines the sole question litigated as follows:

"That it is agreed that this cause shall be submitted and decided upon the one issue, to wit: 'Did the plaintiff file with the secretary of said school board a verified, itemized statement of its claim within four months after the last item of material was furnished?' If so filed within the said four-months period, the plaintiff should recover; otherwise" not.

Plaintiff argues the case as if it were founded on a me-

chanics' lien statute. The principle underlying such statutes is that one who furnishes material or labor for an improvement  thereby benefits the property and benefits its owner, and should, on prescribed conditions, have a lien on the property therefor. No mechanics' lien statute, however, is involved in this case. The action is upon a public contractor's bond, required by Chapter 347, Acts of the Thirty-eighth General Assembly, which, as amended by Chapters 28 and 147, Acts of the Thirty-ninth General Assembly, was in force at the time of the transactions in controversy. We have no occasion to consider the codifying act of the fortieth extra general assembly, House File 254, Chapter 452, Code, 1924, into which the acts of the thirty-eighth and thirty-ninth general assemblies have been merged. Chapter 347, Acts of the Thirty-eighth General Assembly, and amendments, make no provision for a lien against the improved property or against the fund provided for the payment of the contract. This statute makes it essential to the validity of a public contract that the contractor provide, for the security of subcontractors and others, a bond, and prohibits modification or nullification by contrary provisions in the contract. The statute authorizes subcontractors to sue upon the bond, but prescribes a special limitation of time within which action may be brought. The bond in suit is conditioned in compliance with the requirements of the act referred to. Chapter 347, Acts of the Thirty-eighth General Assembly, is entitled:

"An act requiring public contractors to file a bond * * * for the benefit of those furnishing such contractor with materials used or labor performed in the carrying out of such contract * * * providing for suit to be brought thereon, and fixing the time within which such suit may be instituted; and making the furnishing of such bond a condition precedent to the validity of such public contracts, and providing the time within which claims shall be filed."

Section 1, as amended by Chapter 28, Acts of the Thirty-ninth General Assembly, provides that, whenever any public body is empowered to "enter into a contract, for and on behalf of the public, for the purpose of constructing any public build-

ing, * * * whenever the contract price is in excess of one thousand ($1,000) dollars, [such body] shall require as a condition precedent to the making of such contract that the person, firm or corporation to whom the contract is awarded furnish and file a bond, as hereinafter provided, in a sum of not less than 75 per cent of the contract price * * *. The bond shall * * * run to said body * * * for its use and benefit and for the use and benefit of all persons * * * who shall perform any labor or furnish any material, including fuel, in the carrying out of such public contract, and shall have as one of its conditions the following paragraph:

"Now, therefore, the condition of this obligation is such that if the principal shall faithfully perform the contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and shall pay all persons who have contracts directly with the principal for [or?] subcontractors for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"The foregoing condition shall at all times be additional to those conditions and requirements now or hereafter required by statute to be a part of such bonds. The provisions and requirements of this act shall not be modified or annulled by contrary provisions in any such bond or contract."

Section 2, as amended by Chapter 147, Acts of the Thirty-ninth General Assembly, provides that:

"* * * any person for whose benefit the bond is given, or his assigns, may bring an action on such bond for the recovery of such indebtedness; * * * provided that a verified, itemized statement of the claim shall be filed with the * * * secretary of the school board * * * within four months after the last item of material is furnished or labor performed."

It is provided by Section 3:

"No public contract coming within the provisions of this

chapter shall be of any validity until the bond mentioned herein has been executed and filed * * *''

Section 4 provides:

''This act shall be construed as affording additional security to that now provided such claimants under existing statutes and not so as to affect existing mechanic's lien laws or other statutes providing for the filing of similar claims, * * *''

It is stipulated:

''7. That, on or about the 27th day of June, 1923, the said defendant Sam Anderson, as principal contractor for the said school building which was being erected by the Consolidated Independent School District of LeRoy, Iowa, orally entered into a contract with the Queal Lumber Company, plaintiff herein, for the purchase of one carload, or 18,000 feet, of No. 1 maple flooring, at the agreed price of $115 per thousand, with the additional agreement that the Queal Lumber Company would pay the freight thereon to LeRoy, Iowa; that, in said oral contract, said Anderson stated that the architect had advised him that 18,000 feet of said flooring would be required, but that he, Anderson, did not believe that much flooring would be necessary; that it was thereupon agreed that one carload of 18,000 feet would be shipped to said Sam Anderson at LeRoy, Iowa, and charged to him at the rate of $115 per thousand, and that the portion of said flooring not used by said Anderson in the construction of said building should thereafter be returned to the Queal Lumber Company, for which they would give him credit of $115 per thousand; and that said oral agreement was also the well established and general usage and custom existing between lumber concerns and purchasers of flooring in large quantities, approximating carload lots.''

The carload of flooring was shipped to LeRoy and receipted for by the purchasing contractor on July 10, 1923. The car was completely unloaded by the purchaser on July 12, 1923. It is stipulated that:

''A part of the flooring was taken by Sam Anderson immediately from the car, as unloaded, to the grounds on which the school building was being erected, but a material part of the

flooring was stored by Sam Anderson in a building which he had leased, the property of the LeRoy Lumber Company, near the point of unloading. That part of said school building had recently been plastered, prior to July 12, 1923, and the flooring in that part of said building could not then be installed, and that the part of the flooring which was taken to the school premises was shortly thereafter put into the construction of said school building, and after said plastering was sufficiently dried, and from time to time, continuing down to about August 10, 1923, the balance of said flooring was taken from said warehouse to said school building or the grounds, and was used in the construction of said building, the last of said flooring being removed from said warehouse about August 10, 1923.

"11. That, between the 15th day of July, 1923, and the 10th day of August, 1923, from time to time, as needed in the construction of the school building, the lumber thus stored by Sam Anderson in the building of the LeRoy Lumber Company was moved by the said Sam Anderson to the grounds upon which the school building was being erected.

"12. That the distance from the building in which the lumber was stored by Sam Anderson to the school building is approximately two ordinary blocks."

Forty-four hundred feet of the flooring were returned to plaintiff October 2, 1923, and credited to the contractor. Verified, itemized statement was filed November 15, 1923. The statement is:

"Sold to Sam Anderson, LeRoy, Iowa, July 5, 1923, * * * 18,000 ft * * * Maple Flg ·        \$2,070.00
less freight on car        118.95

       \$1,951.05
"Oct. 2, 1923.
"Credit by return of Material 4400 * * *    492.18

"Balance        \$1,458.87

"I certify that the above amount is correct and just and that payment thereof has not been received."

If the flooring was furnished July 12th, or previously, the

statement was not filed within the four months allowed therefor. The cause seems to have been prosecuted in the lower court and decided on the theory, in part at least, that,  under the agreement between the plaintiff and the contractor, the plaintiff was to ship 18,000 feet of flooring, and the contractor was to use what he needed, and return the balance. Inferentially it seems to have been held that title to the material did not pass until used. This theory is untenable (Acts of the Thirty-eighth General Assembly, Chapter 396, Section 19 [Code, 1924, Section 9948]; *Wind v. Iler & Co.*, 93 Iowa 316), and is not insisted upon here.

Plaintiff's theory argued here is that the bond must be construed in connection with, and is modified by, a provision in the contract requiring the district to make payments "on or about the first day of each month, 90 per cent of the value, proportionate to the amount of the contract, of labor and materials incorporated in the work and materials on the site up to the first day of that month as estimated by the architect, less the aggregate of previous payments."

There are three answers to this proposition: First, that the law would prohibit such modification. Second, that the clause provides merely a basis for the making of estimates, and is not  determinative of or relevant to the rights of subcontractors under the statute here under consideration. Third, that the rights of the owner (the school district) and the relationship between the owner and contractor or subcontractor, are not here involved. It is only the relationship and the rights and obligations existing between contractor and subcontractor, between seller and buyer of the material, that are before us for consideration. The bond sued upon is the bond of the buyer (the defendant contractor) executed for the use and benefit (among others) of the seller (plaintiff). The action is upon a statutory bond. It is the statute that grants, measures, and limits the remedy of the plaintiff upon the bond. Such a bond is not elastic. *Schisel v. Marvill*, 198 Iowa 725; *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476. Plaintiff sold the material sued for to Anderson on July 5, 1923. Plaintiff fully delivered the material to Anderson, and Ander-

son accepted it, not later than July 12, 1923. The flooring then became Anderson's property, with the reserved right to return and obtain credit for such of it as he might not need. Code, 1924, Section 9948, supra; *Wind v. Iler & Co.,* 93 Iowa 316, 320. Plaintiff's duties under the contract of sale and plaintiff's responsibility for completing the sale and delivery were fully discharged as early as July 12, 1923. After that date, plaintiff had neither possession nor further control of the flooring. Plaintiff had done everything that it was required to do in furnishing the material "in the carrying out of such public contract." The relationship between plaintiff and the contractor from that date was that of creditor and debtor. Anderson's obligation was to pay the price of the flooring. The time of payment may have depended to an indefinite extent upon the time when the material should be used. Anderson retained the privilege of returning such of the flooring as was not required in the construction of the school building. Whether he would return or not depended upon his own action. As between plaintiff and Anderson, plaintiff was under no duty to see that the material was delivered on the site or that it was installed in the building. It is here unquestioned that the flooring was in good faith ordered for, and, so far as required, used in, the building. Fraud or collusion is not involved. If plaintiff were seeking to establish a lien upon the property or upon the improvement fund, or to enforce a claim against the owner, we would have a different question, a question that was involved in such decisions (as we may, for present purposes, assume mutually hostile) as *Grainger & Co. v. Johnson,* 286 Fed. 833 (33 A. L. R. 315), relied upon by defendant, and *Smalley v. Gearing,* 121 Mich. 190 (79 N. W. 1114), relied upon by plaintiff. See *Sheldon v. Chicago Bond. & Sur. Co.,* 190 Iowa 945, 965; *Neilson, Benton & O'Donnel v. Iowa Eastern R. Co.,* 51 Iowa 184. But here, the plaintiff is pursuing the surety on a statutory bond, given for plaintiff's benefit by the person contracting with it. The plaintiff's remedy and the liability of the surety are limited by the statute which creates them. To avail itself of the remedy, the plaintiff must have filed the verified, itemized statement "within four months after the last item of material is furnished." Clearly, as between the parties to the contract for the sale of the material, the material was furnished by the seller to the purchaser not

later than July 12, 1923. The statement was not filed within four months from that date. The plaintiff's suit is, therefore, barred.—*Reversed.*

STEVENS, DE GRAFF, ALBERT, and WAGNER, JJ., concur.