SMALLEY *v.* GEARING.

1. Mechanics' Liens—Constitutional Law—Freedom of Contract.

The mechanic's lien law of 1891, as amended, is not unconstitutional, as an unwarranted abridgment of the freedom of contract, in that it authorizes the owner to withhold from the contractor the amounts shown by the latter's sworn statement to be owing to subcontractors, laborers, and material men, and subjects him to liability to such persons in case payments are made in disregard of or without requiring such statement.[1]

2. Same—Payments to Contractor by Owner.

By the terms of the act, the owner is not liable to lien claimants in any greater amount than he contracted to pay the original contractor; is entitled to recoup any damages sustained by reason of a breach of the contract; and may protect himself in making payments by requiring such sworn statement, or seeing that the payments are distributed among those who might acquire liens.    In these respects the act differs from that of 1887, which was held unconstitutional in *John Spry Lumber Co.* v. *Sault Savings Bank, Loan & Trust Co.*, 77 Mich. 199.

3. Same—Construction of Contract—Right to Lien.

A clause in a contract for the erection of a building, that it shall be delivered up free of all mechanics' liens or other claims chargeable to the contractor, does not prevent subcon-

---

[1] The effect of payment to contractors or subcontractors upon the liens of subordinate claimants is considered in a note to *French* v. *Bauer*, ( N. Y. ) 20 L. R. A. 560.

tractors, laborers, or material men from obtaining a lien under the statute.

4. SAME—DISTRIBUTION OF PAYMENTS.

The provision of the act relieving the owner from liability to the extent that payments made by him have been distributed among subcontractors, material men, or laborers is effective, although the money paid to them was not the identical money received by the contractor from the owner.

5. SAME—CONTRACTOR AS MATERIAL MAN.

Where the contractor himself furnishes materials, the value thereof is to be included in determining the amount distributed.

6. SAME—PRO RATA DISTRIBUTION.

A *pro rata* distribution among all the claimants is contemplated, however, and the owner is not entitled to credit for an amount received by any claimant in excess of his proportionate share.

7. SAME—TIME FOR FILING LIEN—DELIVERY OF MATERIAL.

Under the provision requiring a material man to file his statement of lien within 60 days from the date on which the last of the material was furnished, the 60 days begins to run from the date when the material was furnished to the owner, or delivered at the building, and not when it was previously delivered to the contractor at his own place of business.

8. SAME—SEPARATE DELIVERIES.

And where the claimant was to furnish all material of a specified class that should be required for the building, and the same was delivered from time to time, as needed in the progress of the work, the deliveries are to be treated as made under a single contract, and the time is to be computed from the date of the last delivery.

9. SAME—UNUSED MATERIAL.

Materials sold to a contractor for use in a building which he is erecting, but not actually used therein, cannot furnish the basis for a lien against the building.

10. SAME—ACCEPTANCE OF CONTRACTOR'S NOTE—ESTOPPEL.

A material man is not estopped to assert a lien merely because he accepted the contractor's note for the price of the materials furnished.

11. SAME—AMOUNT OF CLAIM—INTEREST.

Claimants under the act are entitled to interest upon their several demands from the time they became due.

Cross-appeals from Wayne; Donovan, J. Submitted November 17, 1898. Decided September 12, 1899. Modified as to costs November 7, 1899.

Bill by William Smalley and others against Joseph L. Gearing and others to enforce a mechanic's lien. From the decree rendered, all of the parties except defendant Gearing appeal. Modified and affirmed.

*Charles H. Hatch*, for complainants.

*Walker & Spalding* (*C. A. Kent*, of counsel), for defendants Schmidt and Scherer.

*A. G. Pitts*, for defendant Ashland Brown Stone Co.

*T. E. Tarsney* and *W. G. Fitzpatrick*, for defendant Stanstead Granite Co.

*Warner, Codd & Warner*, for defendant Northwestern Terra-Cotta Co.

*William F. McCorkle*, for defendants Wetmore & Brady.

*Edwin F. Conely* and *Orla B. Taylor*, for defendant Hall & Wolf Co.

*Bowen, Douglas & Whiting*, for defendants Strelinger & Hart.

Long, J. Traugott Schmidt, now deceased, in April, 1895, was the owner of a certain lot in the city of Detroit. On April 9th of that year, he entered into a written contract with Joseph L. Gearing for the construction of a building thereon, for the sum of $52,812.08. Afterwards, Schmidt, with the consent of Gearing, let the contract for the plastering for $6,850; thus leaving the contract to stand at $45,962.08. Gearing went on with the work under the contract, paying most of the labor bills, and in great part for the materials, when, on October 12, 1895, he failed, leaving the building uncompleted. The contract for completion was then let to J. L. Hudson for $22,040.40. He completed it, and was paid for the same. This bill is filed by complainants to enforce a mechanic's lien, under

Act No. 179, Pub. Acts 1891, as amended by Act No. 199, Pub. Acts 1893. The defendants are the owners of the property (the heirs of Traugott Schmidt, deceased), the contractor, and certain lien claimants. The court below found and decreed that there were due to the complainants and defendant lienors the following sums: To complainants, $3,992.89; to the Hall & Wolf Company, $2,608.47; to Stanstead Granite Company, $1,046.46; to Wetmore & Brady, $644.14; to Ashland Brown Stone Company, $2,479.77; to Northwestern Terra-Cotta Company, $1,-238.21; to Strelinger & Hart, $658.30. The court also found by the decree that the amount paid by Schmidt to Gearing under the contract, in excess of the amount distributed among the laborers and material men, was $4,937.48, and that the amount of the contract price remaining unpaid after the payment to Hudson for the completion of the building was $271.68. The court computed interest on these amounts at 6 per cent. from January, 1896, to date of decree, making a total, of principal and interest, of $5,836.39, and made this amount a lien on the land, with interest at 6 per cent. from date of decree. After deducting $15 for entry and stenographer's fees, etc., in favor of complainants, from this sum, the court decreed that the balance should be distributed to the complainants and other lienors ratably and in proportion to the amount due each from Gearing. From this decree all the parties appeal except Gearing.

1. It is contended by the property owners that the act of 1891, as amended by the act of 1893, is unconstitutional, because it is an unwarrantable abridgment of the freedom of contract, and because it undertakes to give special and unreasonable privileges to one class of citizens at the expense of another. The amendatory act of 1893 amends sections 1, 6, and 9 of the act of 1891. Section 1, as amended, provides substantially:

"Every person who shall, as subcontractor, laborer, or material man, perform any labor or furnish materials· to such original or principal contractor, or any subcontractor,

121 MICH.—13.

in carrying forward or completing any such contract, shall have a lien therefor upon such house * * * to the extent of the right, title, and interest of such owner. * * * *Provided,* that any person * * * furnishing material or performing labor of any kind entering into the construction of such building * * * shall, within ten days after furnishing the first of such material, or performing the first of such labor to any contractor or subcontractor, serve on the owner * * * a notice, which notice shall be such as will inform the owner * * * of the nature of the materials furnished or to be furnished or labor performed or to be performed, and a description of the premises where furnished. * * * Such notices, however, shall be sufficient if served at any time subsequent to said ten days; but before the original contractor shall make out and give to the owner * * * a statement under oath of the number and names of every subcontractor or laborer in his employ, and of every person * * * furnishing materials, giving the amount, if anything, which is due or to become due to them, or any of them, for work done or materials furnished, as required by section four of this act. The owner * * * shall not be liable to the subcontractor, material men, or laborers for any greater amount than he contracted to pay the original contractor; * * * but the risk of all payments made to the original contractor after he shall have received the notice above mentioned, or before the contractor shall have furnished him with a statement as hereinbefore provided, shall be upon the owner * * * until the expiration of sixty days within which claims for lien may be filed, as hereinafter provided, and no payment made to any contractor before the expiration of said sixty days shall defeat any lien of any subcontractor, material man, or laborer, unless such payment has been distributed among the subcontractors, material men, or laborers, or, if distributed in part only, then to the extent of such distributions."

Section 4 of the act of 1891, which was not amended by the act of 1893, provides:

"The owner * * * may at any time retain from any moneys due or to become due to the original contractor an amount sufficient to pay all demands owing or unpaid to any subcontractor, material man, or laborer who has filed and served the notice in manner and form

as provided in section one of this act. The original contractor shall, whenever any payment of money shall become due from the owner, * * · * or whenever he desires to draw any money from the owner, * * * make out and give to the owner * * * a statement under oath of the number and names of every subcontractor or laborer in his employ, and of every person furnishing materials, giving the amount, if anything, which is due or to become due to them, or any of them, for work done or materials furnished; and the owner * * * may retain out of any money then due or to become due to the contractor an amount sufficient to pay all demands that are due or to become due to such subcontractors, laborers, and material men, as shown by the contractor's statement, and pay the same to them, according to their respective rights; and all payments so made shall, as between such owner * * * and such contractor, be considered the same as if paid to such original contractor. Until the statement provided for in this section is made, in manner and form as herein provided, the contractor shall have no right of action or lien against the owner * * * on account of such contract; and any payments made by the owner * * * before such statement is made, or without retaining sufficient money, if that amount be due or is to become due, to pay the subcontractors, laborers, or material men as shown by the statement, shall be considered illegal, and made in violation of the rights of the persons intended to be benefited by this act, and the rights of such subcontractors, laborers, and material men to a lien shall not be affected thereby."

The argument against the constitutionality of the act is that, by the amendment of 1893, the owner is prohibited from paying according to the terms of his contract, and the contractor is prevented from obtaining his pay, whenever it appears from the sworn statement that there are bills outstanding in favor of subcontractors, laborers, or material men; and this, although no person to whom a bill is owing has notified the owner that he proposes to claim a lien. It is insisted that this provision of the law, if enforced, will utterly destroy the system of credit as applied to the building business; that every contractor must pay cash or go out of business; that, no matter how

good his credit, or how willing those who supply him may be to trust him, he cannot take advantage of it, because the law forbids; that that flexibility of contract, varying according to circumstances, which is the life of commerce, will be destroyed, and no contract can be safely carried out which does not follow the narrow, rigid lines prescribed by the statute. Counsel cite the case of *John Spry Lumber Co.* v. *Sault Savings Bank, Loan & Trust Co.*, 77 Mich. 199 (6 L. R. A. 204, 18 Am. St. Rep. 396), as sustaining their contention.

Act No. 270, Pub. Acts 1887 (3 How. Stat. § 8398*a et seq.*), was there under consideration. Section 2 of that act provided:

"Such lien shall not be defeated by any contract, agreement, or understanding between the owner, part owner, or lessee of the real estate upon which such improvements are made, or for which such materials are furnished, and the original or any sub contractor, or by any payment made by such owner, part owner, or lessee to such contractor or subcontractor for the contract price of such labor or material [materials], or any part thereof, in case the person performing such labor, or furnishing such material, shall comply with the provisions of this act."

It was said:

"This law makes the mere fact that a building contract exists, or has existed, a sufficient reason for binding the land for any act or omission of the building contractor or his subcontractor, whether within the range of the contract or not, or whether or not in harmony with its terms. * * * It strikes at the foundations of all property in land. * * * The original contract plays no part in the matter, except as a fact which binds no one, and has no significance. Such a gross perversion of all the essential rights of property is so plain that no explanation can make it plainer."

That statute was very unlike the present. The present act provides, by section 1 (Act No. 199, Pub. Acts 1893), as well as by the same section amended in 1897 (Act No. 143, Pub. Acts 1897), that:

"The owner   *   *   *   shall not be liable to the sub-contractor, material men, or laborers for any greater amount than he contracted to pay the original contractor, and shall be entitled to recoup any damages which he may sustain by reason of any failure or omission in the performance of such contract."

In this respect the act differs from the act of 1887. By this provision the owner is fully protected upon any breach of the contract. As to the matter of payments, that section provides:

"The risk of all payments made to the original contractor after he shall have received the notice above mentioned, or before the contractor shall have furnished him with a statement as hereinbefore provided, shall be upon the owner   *   *   *   until the expiration of sixty days within which claims for lien may be filed, as hereinafter provided, and no payment made to any contractor before the expiration of said sixty days shall defeat any lien of any subcontractor, material man, or laborer, unless such payment has been distributed among the subcontractors, material men, or laborers, or, if distributed in part only, then to the extent of such distributions."

This provision points out the way in which the owner may safely make payments; that is, he need incur no risk—*First*, if he refuses payment until he is provided with a sworn statement of the contractor, and complies with it; *second*, if the money paid is distributed, in accordance with the statute, among those who might acquire liens, even though he makes payments without the sworn statement. The owner is not required to make payments beyond the amount called for in the contract. It will be seen, therefore, that he is fully protected if he follows the requirements of the statute. It is true that the original contractor may not be able at all times to get the moneys into his own hands from the owner as rapidly as the contract calls for,—that is, his sworn statement may show that there is an indebtedness to subcontractors, material men, and laborers, and these moneys the owner may withhold, and pay directly to those persons. But the contract must be presumed to have been made in view of these provisions

of the statute.  *Warren* v. *Sohn*, 112 Ind. 213; *Provident Inst. for Savings* v. *Mayor, etc., of Jersey City*, 113 U. S. 506; *Reynolds* v. *Black*, 91 Iowa, 1.  The statute was intended to protect subcontractors, material men, and laborers, and its benefits should not be frittered away by construction, unless clearly unconstitutional.  It does not impair the obligations of contracts, but provides a method for securing payment to those whose labor or material goes into the building, and at the same time protects the owner and contractor, if the provisions of the act are complied with.  The doctrine upon which such liens are founded is the consideration of natural justice that the party who has enhanced the value of property by incorporating therein his labor or materials shall have a preferred claim, in a certain sense, on such property, for the value of his labor or materials.

2. The specifications of the contract between Schmidt and Gearing contain this provision:

"The building or works must be delivered up free of all mechanics' liens or other claims chargeable to the contractor."

It is the contention of the owners of the property that this provision prevents any of the lien claimants in this cause from obtaining a lien.  This contention cannot be sustained.  The contract was made in reference to the lien statute, which expressly confers upon material men and laborers the right to assert liens.  In *Whittier* v. *Wilbur*, 48 Cal. 175, a like question was presented under a somewhat similar contract.  It was said:

"The contractor and owner cannot deprive the material man of his lien by introducing a stipulation into the building contract by which the contractor agrees to indemnify the owner against any lien by persons furnishing materials to be used in the construction of the building."

See, also, Boisot, Mech. Liens, §§ 225-227.

3. It is further contended by the owners that the extent of their liability must be measured by the extent to which payments made by Schmidt to Gearing improperly have

not been disbursed to laborers, material men, etc., as contemplated by the statute; that to this amount should be added the balance of the contract price remaining in his hands over the cost of finishing. This is computed as follows:

| | |
|---|---:|
| Paid to laborers and material men | $18,712 52 |
| Materials furnished by himself | 595 00 |
| Cement, etc., furnished | 152 35 |
| Mistake in statement of account on account of stone furnished | 450 00 |
| Total | $19,909 87 |

That deducting this from the amount paid to Gearing and the balance due on the contract price, of $23,921.68, leaves a balance of $4,011.81. Defendants Schmidt also claim damages, for failure to complete the building in time, of 12 days, at $25 per day, or $300; which being also deducted would leave due from the owners only $3,711.81.

It appears that the contract price for the building was $45,962.08. Gearing failed to complete the building, and the owner let the contract to finish it to Hudson for $22,-040.40. It is conceded by the complainants that this should be deducted from the contract price. Complainants, however, deny the right to make the other deductions, on several grounds:

(*a*) Because it does not appear that the money so paid by Gearing to the laborers and material men was the identical money received by Gearing from Schmidt, but that a large part of it was received from J. L. Hudson. We think this contention of complainants cannot be sustained. The money was paid out by Gearing. The purpose of the act was to insure that an amount equal to the amount which the contractor received should go, if so much were necessary, to the payment of those who contributed to the construction of the building. It could not matter out of what funds the contractor paid, so long as he paid an amount equal to the amount received from the owner.

(*b*) Because Gearing was not a material man, within the meaning of the act, and therefore he could not use material he had on hand, and credit payments made for such material. The language of the act is:

"But the risk of all payments made to the original contractor after he shall have received the notice above mentioned, or before the contractor shall have furnished him with a statement as hereinbefore provided, shall be upon the owner * * * until the expiration of sixty days within which claims for lien may be filed, as hereinafter provided, and no payment made to any contractor before the expiration of said sixty days shall defeat any lien of any subcontractor, material man, or laborer, unless such payment has been distributed among the subcontractors, material men, or laborers, or, if distributed in part only, then to the extent of such distributions."

Complainants contend that Gearing could not furnish material, and then distribute payments to himself as a material man, and thus relieve the owner by such distribution. The contention is that two classes of material men are recognized—*First*, those who furnish materials as contractors pursuant to a contract made with the owner of the building; *second*, those who furnish materials as material men to an original or principal contractor, pursuant to a contract made only with the contractor; and that it is only material men of the second class that are meant in those clauses of the statute providing that the owner shall have the benefit of money actually distributed among subcontractors, material men, and laborers.

This contention cannot be sustained. The distribution of payments is to be among subcontractors, material men, or laborers. Section 1 of the act of 1893 provides expressly that contractors may furnish materials and labor and have a lien therefor. To the extent that Gearing furnished materials, he is a material man, within the meaning of the part of the act upon which counsel for complainants relies. Section 29 of the act of 1891 defines the words "material men" to be and include "all persons by whom any materials are furnished in or for the building," etc.

4. It is also contended by counsel for complainants that the moneys paid to Gearing by Schmidt were not distributed *pro rata* among the subcontractors, laborers, and material men, and that, therefore, the owners are not entitled to have the full amount of deductions claimed. Counsel relies upon the construction which he gives to the provision of the statute above quoted,—that is, that there must be a *pro rata* distribution among them,—and cites in support of that contention *Fairbairn* v. *Moody*, 116 Mich. 65. It is claimed that, under the rule there laid down, the distribution of the entire fund is to be made among those who, at the end of the work, have claims for labor and material, without regard to the time when they respectively earned their pay by doing their work or furnishing their material.

Counsel is correct in this contention. The rule stated in that case was as follows:

" It cannot be said that the payment to one of the entire contract price would amount to 'distribution;' nor is it doubtful that the term, as here employed, means a distribution among all entitled to take."

No sworn statements were furnished to the owner, and there was no *pro rata* distribution of the funds received by Gearing. All the laborers, and some of the subcontractors, who had claims at that date, were paid in full by this distribution. The owner was entitled to be credited with such of the moneys paid into Gearing's hands as had been distributed by Gearing, in accordance with the statute, to laborers and material men, as well as credited with items for materials which were furnished by Gearing that actually went into the building, as Gearing stands, as to such items, as a material man, under the statute. There having been, however, no *pro rata* distribution of the funds by Gearing, a new computation must be made, in which all the laborers and material men must be included; and if, on such computation, it is found that certain of them have been paid more than their *pro rata* share, the owners

will be held liable for such overpayments, and that amount added to their liability.

We think the proofs show that the owners are entitled to have their damages for the 12 days' delay by Gearing, at $25 per day, making that item $300.

5. The other defendants are lien claimants, and the complainants, as well as the defendant owners, attack their respective claims upon several different grounds. Claim of Ashland Brown Stone Company: It appears that in April, 1895, the company had a quantity of stone at the dock in the city of Detroit. It was sold to Gearing for this building for $1,841.88, and freight from the dock to Gearing's yard, to be delivered there. It was delivered there on May 14th. Mr. Gearing stated that it was to be used in that building, and it was sold for that purpose. In June following, another quantity was sold for $787.85, and delivered at Gearing's yard. Notes were taken on these sales. The first stone sold was cut at Gearing's yard at his expense. On account of the delay in the building, none of this stone was put into the building until after September 11, 1895. Between this date and October 1st, he took this stone, from time to time, to the building. Some of the stone was not put in until October 1st. The statement of lien was filed by the company November 9, 1895. It is claimed by complainants that, this claim not being filed until five months after the last stone was delivered at Gearing's yard, the lien cannot attach. It is also claimed that about 1,000 cubic feet of this stone never went into the building. The total amount of the claim of the company is $2,629.73. The court below disallowed the claim for the stone not put in the building, and allowed the balance at $1,949.13.

The statute of 1891, by section 5, provides that:

"Verified statement or account shall be filed within sixty days from the date on which the last of the materials shall have been furnished, or the last of the labor shall have been performed, by the person claiming the lien."

It is claimed by the stone company that the 60 days began to run from the date that the materials were delivered at the building. On the other hand, it is contended by complainants that the 60 days began to run from the time that the last of the materials were furnished by the stone company to Gearing at his yard, June 8, 1895. This contention must be settled by the construction which is to be given to the language of the statute. The lien law was enacted for the benefit and protection of laborers and material men, and should be construed liberally. The verified statement or account must be filed within 60 days from the date on which the last of the materials shall have been furnished. We think the meaning of the statute is that the 60 days begins to run from the date when the last of the materials shall have been furnished to the owner, or delivered at the building. The material man furnishes the material to the owner through the contractor, the same as the laborer performs labor for the owner under the direction and authority of the contractor. The stone company, it is true, delivered the stone at the yard of Gearing; but it was delivered there at the request of Gearing, to be dressed and afterwards delivered at the building. Had Gearing filed a claim of lien for this material at the time it was filed by the stone company, no question could be raised as to the time. The claim of lien would have been filed in time. It was purchased for the very purpose of being put into this building. The claimant could not have filed a claim of lien for the materials until they were delivered to the owner at the building. In *Wentworth* v. *Tubbs,* 53 Minn. 388, it was held, under the statute of that State, that "materials for a building are usually said to be furnished when they are delivered on the premises on which they are to be used."

The court below was not in error in deducting from the claim the value of the stone not used in the building. The equity of a lien claim for labor or materials arises from the fact that the value of the property to which they have been applied has been increased. The language of the act giving the lien is that:

"Every person who shall, as subcontractor, laborer, or material man, perform any labor or furnish materials to such original or principal contractor, or any subcontractor, in carrying forward or completing any such contract, shall have a lien therefor."

6. What we have said in relation to the claim of the Ashland Brown Stone Company applies equally to the claims of the Stanstead Granite Company and the Northwestern Terra-Cotta Company. Those claims were filed in time, and were properly allowed by the court below.

7. The Wetmore & Brady claim: This claim was filed November 6, 1895, and they insist that the last of the cement was not furnished until September 26th. Complainants claim that the lien was not filed in time. It appears that, in the spring of 1895, Wetmore & Brady agreed to furnish Gearing what cement he required for the building. Gearing said he would want from 200 to 400 barrels. The first delivery was 100 barrels on April 29th. This was paid for, and does not enter into the claim. Wetmore & Brady purchased, and had shipped to them by water, 300 barrels more. This was put in Brady's warehouse, and delivered by Brady from time to time to the teamsters of Gearing, as they called for it. Up to the 20th of August, 200 barrels more had been delivered, and a bill was presented to Gearing for it, and a note given by him for the amount. It is contended that this note was considered as payment. The mere fact of giving the note does not estop the claimants from asserting a lien. There is no showing that this note was a settlement of the matter. Mr. Brady testified that the cement was in his warehouse; that no definite amount was specified by Mr. Gearing that it would take to complete the building, and that no definite amount was agreed upon; that the teamsters came and got it as it was needed in the building. It does not appear that any definite amount was set aside as sold to Gearing. The last delivery was, as Brady testified, September 26th. We are satisfied from the record that the claim of lien was filed in time, and that the court properly allowed the claim.

8. The claim of the Hall & Wolf Company: The objection to this claim is that each delivery of brick was upon a separate order from Gearing, and that the 60 days began to run from each delivery. The claim of lien was filed October 31, 1895. It appears clearly that the parties agreed that the Hall & Wolf Company should furnish the brick for the building. There was no showing that each delivery was a separate purchase, but that the brick were delivered from time to time, as needed for use. Mr. Gearing testified that, at the time he had the talk in April with the claimant about this building, he expected to take all the brick for the building from the company. The price was fixed in April at $5.75 per thousand, and they were delivered from time to time from April to October. It cannot be said that these brick were furnished under a series of separate orders, making each order a separate contract. The arrangement amounted to this: That a contract was made for what brick Gearing needed in that building, to be delivered from time to time, as required in the progress of the work. They were all supplied under one continuous contract, and the 60 days began to run from the time of the furnishing of the last material. The claim was properly allowed.

9. The claim of Strelinger & Hart: It appears that certain materials were furnished to Gearing on September 28, 1895, by this firm, to the amount of $580. These materials went into the building, and no contest seems to be made over the correctness of the claim. The court below allowed it at that amount. That finding is approved.

All the claims will draw interest from the time each fell due.

It must necessarily follow that the claims so allowed, when taken together and added to the cost of completing the building by Hudson, will exceed the contract price. What each claimant will be entitled to will be determined in accordance with this opinion, and the decree below will be modified and affirmed in accordance therewith. The defendants who are lienors will recover their costs from

the complainants and the defendant owners. No other costs will be allowed in this court.

The other Justices concurred.

### ON APPLICATION FOR REHEARING.

PER CURIAM. A motion for rehearing has been made by the complainants in this cause on the question of costs. We have re-examined that question, and are satisfied that the defendant lienors should not recover costs against complainants, but that complainants and defendant lienors should recover their costs of this court and of the court below against the defendant owners of the property. But one set of costs, however, is allowed, and that to be divided between the parties. Decree will be entered accordingly.