## DELRAY LUMBER CO. *v.* KEOHANE.

| 132 | 17 |
| 149 | ³691 |
| 132 | 17 |
| 151 | ⁵281 |

1. HOMESTEAD—RESIDENCE.
   One who resides on property owned by himself cannot claim a homestead in another parcel upon which he is at the time erecting a dwelling.

2. SAME—MECHANIC'S LIEN—EVIDENCE.
   In a suit to enforce a mechanic's lien upon a dwelling, defendant claimed the house was her homestead, and testified that, while it was being built, she lived on a certain street in a house which she did not own, and that she had no other property in the city than that involved in the suit. Complainants put in evidence a deed executed by her after the lien had attached, conveying a lot on the street upon which she lived. *Held*, that the circuit judge was justified in discrediting her testimony, and his finding that the property involved in the suit was not her homestead would not be disturbed on appeal.

3. BUILDING CONTRACT—CHANGES—WAIVER—LIEN.
   Such changes by the owner from the original contract as are

frequently made, in good faith, during the construction of a house, do not constitute such a waiver of the contract as will exclude its terms in determining his liability under the lien law.

4. PROMISE TO PAY SUBCONTRACTOR—LIEN.

A promise by the owner of a house to pay a subcontractor a balance due him from the contractor would not establish a lien against the owner's property which did not otherwise exist.

5. ABANDONMENT OF CONTRACT—COST OF COMPLETION—LIENS.

Where a contractor has abandoned his contract for the construction of a house, subcontractors and materialmen are entitled to liens for such a proportion of the amount of their claims arising before the abandonment as the contract price is of the actual cost of constructing the house in accordance with the original contract.

Appeal from Wayne; Donovan, J. Submitted November 19, 1902. (Docket No. 99.) Decided December 16, 1902.

Bill by the Delray Lumber Company and Joseph E. Hugg and Albert Oltz, copartners as Hugg & Oltz, against Katherine Keohane and James Scheel, to enforce mechanics' liens. From a decree for complainants, defendant Keohane appeals. Reversed.

*Wilkinson & Younglove* and *Alex. M. Rea,* for complainants.

*James H. Pound,* for appellant.

CARPENTER, J. This is a chancery suit to enforce two mechanics' liens against the property of the first-named defendant. The first-named complainant claims a lien by reason of lumber furnished in the construction of a house for the defendant Keohane. The other two complainants are partners doing business under the firm name of Hugg & Oltz. They claim a lien for the balance unpaid on a contract to do the masonwork on said house, and for labor performed in lathing said house. The court below decreed the enforcement of these claims at their full amount.

Defendant Keohane appeals. She claims that the decree should be reversed on two grounds: *First*, that the property in question was the homestead of defendant Keohane, and that, as the complainants' contracts were verbal, it is not subject to the liens asserted by them; *second*, that complainants are not entitled to payment in full for the amount of their claims. A discussion of the questions raised by these claims will review every question presented by the record.

1. Was the property a homestead? When the complainants' liens attached, the property was unoccupied. If, therefore, defendant resided on other property owned by her, she could not claim a homestead in the property in question. *McMonegal* v. *Wilson*, 103 Mich., at page 268 (61 N. W. 495). Defendant testified that, when the house was built, she lived on Lansing avenue, Detroit, part of the time, and boarded part of the time; that she did not own the house in which she lived, and at that time owned no other property in Detroit than that involved in this suit. Complainants put in evidence a deed executed July 18, 1901 (this was after complainants' liens had attached), from defendant Keohane to Thomas Gaffney and wife, conveying lot 31 of P. Williams' subdivision of private claim 31, fronting on Lansing avenue. When this testimony was introduced, complainants' counsel stated:

"The testimony shows she was living on Lansing avenue, and that she did not own the house. I will produce further proof of that."

No further proof was produced either by complainants or by defendant.

The trial judge, in his decision, stated:

"I find, also, * * * that this was not the homestead of the defendant at the time the liens were filed. Indeed, she had another and separate homestead."

It must be admitted that the evidence respecting the homestead was left in an unsatisfactory state. It is difficult to understand why complainants' counsel did not

carry out his proposed plan, which was, as we understand, to prove that defendant resided on the land subsequently conveyed to Gaffney. On the other hand, it is even more difficult to understand why, if this land was not that on which defendant lived, she did not, as she surely could, prove that fact. If this condition of the record did not furnish affirmative testimony that defendant resided on the land subsequently sold to Gaffney, it certainly did justify the trial judge in discrediting, as he did, defendant Keohane's testimony that she did not own the house in which she lived. This decision we will not disturb.

2. Are complainants entitled to payment in full? Defendant James Scheel was the principal contractor. The contract price was $1,100. About June 1, 1901, and after $550 had been paid him, Scheel abandoned his contract, leaving the building incomplete. Of the amount so paid, Scheel had paid out to laborers and materialmen $405.02, though this had not been distributed as required by the principles announced in *Fairbairn* v. *Moody*, 116 Mich. 65 (75 N. W. 469), and *Smalley* v. *Gearing*, 121 Mich. 190 (79 N. W. 1114, 80 N. W. 797). At that time he owed the first-named complainant $312.50, the amount of its claim asserted in this case, for material used in the building. He also owed the other complainants, Messrs. Hugg & Oltz, but just how much it is impossible, by this record, to state; and the building at that time was very far from completion. After this abandonment, defendant Keohane proceeded and completed the building at an additional expenditure of $1,016.35. The complainants insist that the rule for determining the amount of claims announced in *Fairbairn* v. *Moody*, 116 Mich. 65 (75 N. W. 469), and *Smalley* v. *Gearing*, 121 Mich. 190 (79 N. W. 1114, 80 N. W. 797), should not be applied, for two reasons: *First*, the contract between Keohane and Scheel was so vague and indefinite that it must be disregarded; *second*, defendant Keohane, in completing her house, made a different house from that contemplated by the original contract, and thereby waived all rights under said contract.

There is no merit in the first contention. While the contract is informal, its meaning is made sufficiently clear by the accompanying plans and specifications.

In completing the house after the abandonment by defendant Scheel, defendant Keohane did make some changes in the original contract, which obtained for her a house, as she stated, "a little better" than was originally contemplated. These changes, however, were simply such changes as an owner, in good faith, not infrequently makes during the process of construction. For instance, a window was extended out; grills were put in; inside woodwork was filled and oiled, when the specifications called for three coats of paint; bevel plate glass was put in the front door, when the specifications required No. 1 glass. Surely, these changes do not justify a disregard of the principles of the case of *Smalley* v. *Gearing.*

The condition of this record, however, is not such as to enable this court to finally dispose of this controversy. It has already been stated in this opinion that it is impossible to determine from this record what amount was due Messrs. Hugg & Oltz at the time defendant Scheel abandoned the contract. It is shown by the testimony in this case that, after that abandonment, Messrs. Hugg & Oltz did some work under an agreement with defendant Keohane that she should pay for the same; that the' total amount due for work done under said agreement with defendant Keohane, and the balance remaining due under their contract with defendant Scheel, aggregated $92.50. But how much of this $92.50 consisted of the balance due under their contract with defendant Scheel, or how much arose from work done under the agreement with defendant Keohane, the record does not disclose. It is obvious that the amount due Messrs. Hugg & Oltz for work done directly under a contract with defendant Keohane should not be reduced, under the principles of *Smalley* v. *Gearing, supra.* It is equally obvious that the amount due them for work done under their contract with defendant Scheel must, in accordance with those princi-

ples, be reduced. This is true, notwithstanding other testimony in the record that defendant Keohane promised to pay this balance, as this promise certainly would not establish a lien against her property which otherwise did not exist. The record furnishes no *data* by which the court can determine the cost of completing the building in accordance with the original contract. It is true, we are informed that it cost $1,016.35 to finish the building, but this amount was expended for building according to the method adopted; in other words, there is included in these figures a sum, which we cannot determine, for some extras and departures from the original contract.

Complainants Hugg & Oltz are entitled to a decree for the full amount of their claim for work done after the abandonment by defendant Scheel. The balance of their claim, and the claim of the complainant the Delray Lumber Company, must be reduced according to the principles announced in the case of *Smalley* v. *Gearing, supra;* that is to say, they will have such a proportion of the amount of their claim as $1,100 is of the cost of constructing the house in accordance with the original contract. The record shows every element of this entire cost, except one, viz., the amount expended by defendant Keohane in constructing the house according to the original contract. This amount may be determined by subtracting from $1,016.35 (the amount it cost the defendant Keohane to complete the building in the way it was completed) the cost of changes and extras. The remainder, added to $405 (the aggregate of complainants' demands), and $405.02 (the amount expended by defendant Scheel), will represent the entire cost of constructing the house according to the original contract.

The decree will be reversed, and the record remanded to the court below, with directions to take proofs and to enter a decree in accordance with the principles herein stated. Defendant Keohane will recover the costs of this court. Complainants will recover costs in the lower court.

The other Justices concurred.