## FROHLICH v. ASHTON.

1. MECHANICS' LIENS—OVERCHARGE—ESTOPPEL.
   A materialman who files a mechanic's lien is not estopped by the fact that, without bad faith, he claimed more than was due him.

2. SAME.
   Where the mistake in claiming a mechanic's lien for an excessive amount is an honest one, the lien is not lost.

3. SAME—DIVISIONS OF AMOUNTS AMONG CLAIMANTS.
   In determining the amounts to be paid each of the lienors, the cost of the building, where the contractor defaults and compels the owner to complete the building, includes not only liens which have been allowed but all unpaid creditors for material and labor furnished.

Appeal from Wayne; Donovan, J. Submitted October 14, 1909. (Docket No. 91.) Decided December 30, 1909.

Bill by Simon Frohlich against Laura M. Ashton, Abram Sapiro and others to enforce a mechanics' lien.

From the decree rendered, defendants Ashton and Sapiro appeal.   Modified and affirmed.

*Lucking, Emmons & Helfman,* for complainant.

*Bernard B. Selling,* for defendant Ashton.

*Edwin S. Bartlett,* for defendant Sapiro.

*Covert & Berry,* for defendant Howie Roofing Co.

*Joseph H. Bayne,* for defendants Guilloz and Touseau.

*George M. Read,* for defendant Forster.

*O. E. Angstman,* for defendant Weber.

MOORE, J.   The bill of complaint was filed to foreclose a mechanic's lien.   Six other lienors filed cross-bills for the same purpose.   There is substantially no dispute of fact.   The two questions raised relate solely to the method by which the balance owing by the owner is to be distributed among the lienors.   The circuit judge rejected the lien of the Michigan Lumber Yard and made division of the money among the others.   The owner subsequently purchased the rejected lien.

On July 14, 1906, Laura M. Ashton entered into a written contract with George L. Horning for the erection of a brick dwelling house for the sum of $5,750.   The various lienors were subcontractors under Horning.   When it was almost entirely completed, Mr. Horning abandoned the job, and Mrs. Ashton employed Mr. Vinton to complete the building, and paid him $25.20 for doing so.   The owner, Mrs. Ashton, testified: That the contract price was $5,750; extras, $262.10; total, $6,012.10; that she had paid on the various accounts $5,332.92.   She claimed slight deductions from the balances claimed by Frohlich Glass Company, Mr. Forster, and the Howie Roofing Company, which were allowed, and it was agreed by her and the lienors that the following was a correct statement of all the unpaid creditors, whether they were lienors or not:

| | Name. | Amt. of Claim. | Amt. Paid. |
|---|---|---|---|
| 1. | Frolich Glass Co. | $1,124 08 | $800 00 |
| 2. | Samuel J. Guilloz | 163 75 | 120 00 |
| 3. | Richard J. Forster | 219 14 | 100 00 |
| 4. | Howie Roofing Company | 142 05 | 40 00 |
| 5. | White & Fisher | 414 00 | 147 00 |
| 6. | Kinney Electric Co. | 99 00 | 50 00 |
| 7. | John Bollin | 2,050 00 | 2,000 00 |
| 8. | Detroit Mantel & Tile Co. | 32 00 | |
| 9. | H. C. Weber | 67 15 | |
| 10. | Schneider & Carrol | 229 00 | 100 00 |
| 11. | Pittsburg Plate Glass Co. | 27 18 | |
| 12. | Michigan Lumber Yards | 983 57 | 700 00 |

Numbers 6, 10, and 11 filed no liens. No. 12 filed a lien, but did not appear further in the proceeding. Payments were made without requiring the affidavit provided in section 1 of Act No. 17, Pub. Acts 1903. The Michigan Lumber Yard had guaranteed the performance of the original contract, and payments were made at the request of its manager to the contractor.

Counsel for the appellees contend as follows:

"Two questions are therefore presented:
"(1) Was the Michigan Lumber Yard estopped from participating in the distribution of funds remaining on hand?
"(2) In determining the percentage to which each of the lienors is entitled, should the cost of the building include only the liens which have been proved and allowed, or also all unpaid creditors, without regard to whether they have filed claims of lien at all, or, having filed the same, have neglected to prove them in this suit, to which they are parties?" and answers the first one in the affirmative and the second one by saying the cost of the building should be deemed for this purpose to include only the liens which have been proved and allowed.

In addition to the questions, the counsel for appellants contend that, as complainant in his affidavit made a claim for $45 in excess of his actual claim, he should be held to have lost his lien. There is nothing to indicate that complainant intentionally made a greater claim than was due.

The difference is shown to have arisen out of an exchange or return of seven doors that were sent to the house. The rule has been stated to be that, where the mistake in claiming the lien is an honest one, the lien will not be lost. *Fairbairn* v. *Moody*, 116 Mich. 61 (74 N. W. 386, 75 N. W. 469); *Frohlich* v. *Carroll*, 127 Mich. 561 (86 N. W. 1034).

The other question is, How should the *pro rata* be computed? Should the cost of the building be held to include only the liens which should have been allowed, or should it be the actual cost?' These questions are answered in the language of Justice CARPENTER in *Godfrey Lumber Co.* v. *Cole*, 151 Mich. 280 (114 N. W. 1018):

"Its counsel insist that in computing the cost of the building the trial court should not have considered payments made contrary to the provisions of section 10713, 3 Comp. Laws. We have never discussed this question; but we have decided it. We have held that such payments for labor or material actually used in construction are proper items in determining the cost of the building. *Delray Lumber Co.* v. *Keohane*, 132 Mich. 17 (92 N. W. 489); *Kotcher* v. *Perrin*, 149 Mich. 690 (113 N. W. 284). See, also, *Fairbairn* v. *Moody*, 116 Mich. 61 (74 N. W. 386, 75 N. W. 469), and *Smalley* v. *Gearing*, 121 Mich. 190 (79 N. W. 1114, 80 N. W. 797). See, also, Wilkinson on Mechanics' Liens, §§ 100, 101. It is conceded that if the owner had paid nothing, and all those who contributed labor and material asserted liens, complainant would receive precisely what this decree gives him. We are unable to see why it should receive more because the claimants were paid and paid before they asserted their liens. This method of computation deprives the owner of credit for, and compels him to lose, all that he has paid to the various laborers and materialmen in excess of their *pro rata* share as required by *Smalley* v. *Gearing, supra*. As applied in this case, it will compel defendant to pay $4,115.32 for houses which his contract entitled him to have for $3,500. Complainant as a lien claimant had a right to insist that the contract price be apportioned among the laborers and materialmen. Had such an apportionment been made, it would have all that it was entitled to receive. *Fairbairn*

v. *Moody*, and *Kotcher* v. *Perrin, supra.* The decree appealed from gives complainant precisely what by such apportionment it is entitled to receive. This is equitable and legal and in accordance with our decisions. There is no merit in complainant's contention."

It follows that the computation made in the court below is erroneous, and the decree should be modified accordingly. The appellant will recover costs of this court.

BLAIR, C. J., and GRANT, MCALVAY, and BROOKE, JJ., concurred.