PEOPLE, *for use of* TAVOLIERI, *v.* SCHEWE.

1. MUNICIPAL CORPORATIONS—PUBLIC BUILDINGS—ACTION ON BOND —LIABILITY FOR WAGES OWING BY SUBCONTRACTOR.

In an action on a bond given in pursuance of Act No. 187, Pub. Acts 1905 (3 Comp. Laws 1915, § 14827 *et seq.*) to protect laborers and materialmen, a contractor on a public building, who neglects to first make inquiry as to his subcontractor's debts before making payments to him, is liable for wages owed and unpaid by said subcontractor.

2. SAME—DEDUCTION OF PAYMENTS.

Nor may his obligation on the bond be limited, under the provisions of 3 Comp. Laws 1915, § 14828, by deducting the amount paid to the subcontractor, where said payments were made without requiring proof of the subcontractor that his labor and material bills were paid.

Error to Wayne; Codd (George P.), J. Submitted April 14, 1920. (Docket No. 59.) Decided June 7, 1920.

Separate actions of assumpsit in justice's court by the people of the State of Michigan, for the use and benefit of Carmeno Tavolieri, Paul Garbino and Andrew Bostinelli, against Charles R. Schewe, principal, and the United States Fidelity & Guaranty Company, surety, on a bond. There were judgments for plaintiffs, and defendants appealed to the circuit court where the cases were consolidated and tried as one. Judgment for plaintiffs on a directed verdict. Defendants bring error. Affirmed.

*Monaghan, Monaghan, O'Brien & Crowley,* for appellants.

*Harry H. Wait,* for appellees.

STONE, J. The "use" plaintiffs herein instituted separate suits against the defendants in justice's court in the city of Detroit. The actions were in assumpsit, and written declarations were filed alleging breach of the bond given by defendant Schewe as principal, and the United States Fidelity & Guaranty Company as surety. The defendants pleaded the general issue. The plaintiffs recovered judgments in the justice's court. A general appeal was taken therefrom by defendants to the Wayne circuit court, where the cases were, by stipulation, consolidated and tried as one case, and a verdict and judgments were directed for each of the plaintiffs.

Defendant Charles R. Schewe, doing business under the assumed name of Charles R. Schewe Company, entered into a contract July 1, 1918, with the fire commission of the city of Detroit to do the mason work and furnish the materials and labor therefor, in the construction of a fire engine house in the city of Detroit for $28,142. The defendant guaranty company is the surety on the statutory bond in the penal sum of $28,142, given by Mr. Schewe for the protec-

tion of subcontractors, laborers and material men, in pursuance of Act No. 187, Pub. Acts 1905 (3 Comp. Laws 1915, §§ 14827-14830), entitled:

"An act to insure the payment of subcontractors and wages earned and material used in constructing, repairing or ornamenting public buildings and public works."

One Albert Pidro was a subcontractor of defendant Schewe. By a written contract dated July 17, 1918, Pidro agreed to furnish the labor and material in connection with the excavation and sewer work on this job for $1,700. The plaintiffs claim to have been employed by Pidro, the subcontractor, and to have performed labor in connection with his subcontract, and are seeking in their respective suits to recover on the bond the amounts claimed to be due them, severally, from Pidro, their employer. It should be stated that on the trial no question was raised as to the performance of the labor by the plaintiffs, nor that the respective amounts claimed were reasonable and proper. And it seems to have been conceded that plaintiffs were not subcontractors but laborers. Upon the trial there was an issue of fact as to whether or not the subcontractor, Pidro, abandoned the job before completing it, or whether he had completed it when he quit work. It was the claim of defendant Schewe that Pidro abandoned the job before completing it, and there was evidence tending to support the claim. On the other hand, Pidro claimed and testified that he had completed the contract when he quit. He admitted and testified that prior to the last work done on the job Schewe had paid him a total of $800 on the contract.

At the close of the evidence the plaintiffs moved for directed verdicts in their favor for the amount of their respective claims,—

"upon the theory that under the statute this bond cov-

ers absolutely payment of all labor and material up to the contract price. That the subcontractor is not entitled to any money, and that the principal contractor has no right to pay him money until receipt or satisfaction has been received from his laborer and material men. That the $800 paid to Pidro is not entitled to credit, in the reduction of this claim."

It is the claim of defendants' counsel that this motion was, in effect, an admission by the plaintiffs that Pidro abandoned the job before completing it, and that the total cost to defendant Schewe, as claimed by him, in having that part of the job completed, was $2,320.

The condition of the bond upon which plaintiffs rely for recovery reads as follows:

"Now the condition of this obligation is such that if the said Charles R. Schewe Co. shall pay to any subcontractor, or by any such contractor or subcontractor as the same may become due and payable of all indebtedness which may arise from said contract to a subcontractor, or party performing labor or furnishishing materials, or any subcontractor to any person, firm or corporation on account of any labor performed or materials furnished in the erection, repairing or ornamentation of such building, improvement or works, then this obligation shall be void, otherwise the same shall be in full force and effect."

It is not questioned that the bond was given pursuant to the provisions of the statute above referred to.

Section 14830, 3 Comp. Laws 1915, provides that such bond may be prosecuted and a recovery had by any person, firm or corporation to whom any money shall be due and payable, on account of having performed any labor or furnished any materials in the erection of any such building or works, in the name of the people of this State for the use and benefit of such person, firm or corporation, and it contains the following proviso:

*"Provided, however,* That in the case of a suit for the benefit of a subcontractor, he shall be required to

allege and prove that he has paid to all parties entitled thereto the full sums due to them for labor or materials contracted for by him."

It is well in this connection to note the proviso in section 14829, which reads as follows:

"*Provided, however,* That the principal contractor shall not be required to make any payment to a subcontractor of sums due from the subcontractor to parties performing labor or furnishing materials, except upon the receipt or the written orders of such parties, to pay the sums due to them to subcontractors."

The defendants have brought the case here on writ of error, and by proper assignments of error they raise the questions discussed, as follows:

1. Must a contractor, in constructing public buildings, first make inquiry as to his subcontractor's debts for labor and material, before making payments to the subcontractor?

The object and purpose of the statute under consideration have been stated by this court as follows:

"We are of the opinion that by the statute in question, the legislature intended to afford to those who furnish labor or material for public buildings or works, the same protection they would have under the general lien laws of the State, had the labor and materials been furnished for a private undertaking. If we are correct in this view, we are left in no doubt as to the construction the statute should receive. In *Smalley* v. *Gearing,* 121 Mich. 190, 203, this court said:

" 'The equity of a lien claim for labor or materials arises from the fact that the value of the property to which they have been applied has been increased.' " *City of Alpena* v. *Surety Co.,* 159 Mich. 329, 333.

In view of the provisions of the statute above quoted, and keeping in mind the purpose of the legislation, we are of the opinion that the above question should be answered in the affirmative.

2. It is next urged by appellants that the principal contractor shall not be obligated to any greater extent than is provided for in his contract with the subcontractor, and section 14828 is referred to. Counsel for plaintiffs reply to this proposition as follows:

"Counsel for defendants contend, under the provisions of section 14828, that the bond given herein is not liable for the payment of the claims of plaintiffs, because the subcontractor, Pidro, abandoned the contract, and that it cost a sum in excess of his contract price to complete the contract. Said section, in so far as it is material here, reads as follows:

"'But the subcontractor and the persons who shall have performed labor or furnished materials to him shall not in the aggregate be entitled to receive larger sums than may be required from the principal contractor under his contract with the subcontractor, nor shall this act be construed to change in any way the contract which may have been made between the principal contractor and the subcontractor, *except* when such contract shall attempt to relieve the principal contractor as against the demands of those performing labor or furnishing materials to the subcontractor.'

"Counsel for defendants omit to call attention to the exception at the end of the section which reads: 'Except when such contract,' etc.

"The foregoing section 14828 was added in 1905. Prior to this time subcontractors were not entitled to the protection of the required bond. (Citing cases.)

"It is insisted here that the section above referred to was enacted for the purpose of giving protection to the subcontractor under the required bond, under which his recovery is limited to the aggregate of his claims and the persons who shall have furnished labor or material to him which he has actually paid, and does not in any way affect the demands of those performing labor or furnishing materials to the subcontractor, regardless of whether or not such claims in the aggregate exceed the contract price of the subcontractor. There are no provisions in said act whereby the surety liability can be pro-rated. It differs in this respect materially from the general or so-called mechanic's lien law, and therefore, the contention of

defendants that in case of abandonment by the contractor, the owner may, as against all claims of contractors' employees, complete the structure and charge the cost thereof as against the contract price, has no application to the instant case. *. * * The surety upon the bond herein, according to the conditions named in said bond, is liable to the full amount of the penalty named in the bond, to wit, the sum of $28,142. There is no evidence in the case before us to show that the cost of the fire engine house to be erected under the contract, and for which the bond was given, exceeded that sum."

We are of the opinion that the trial court properly disposed of this proposition in the charge, from which we quote below.;

3. Further commenting upon this section of the statute, attention is called by defendants to the fact that according to the terms of this contract $600 were to be paid to Pidro when certain of the work was completed and the balance in three installments, upon the certificate of the architect. We think that this matter was fully and correctly covered by the charge of the court, which was in part as follows:

"It is my opinion that the act which was passed some years ago requiring a bond to be furnished by a contractor for the performance of public work, was giving to material men and laborers upon a public building, the same protection, or a protection of a like nature, which is given to men furnishing material and performing labor upon a private dwelling, or upon a private building. Now, there is no dispute in this case that the three plaintiffs performed work that they state they performed and that their bills were proper and reasonable. There is no dispute in this case, as I understand it, and it is conceded by counsel, that the amount thereof had not been paid. It seems, however, that during the progress of this work, the sum of $800 had been paid. It is also shown that no inquiry was made by Mr. Schewe asking for and in behalf of his company, as to the disposition of this money, or whether or not others who had been employed by Pidro, the subcontractor, had been paid. It

seems to me that under the terms of the act, he could very rightly have withheld payment of moneys until he had been so assured, because the act provides that the subcontractor cannot sue the principal contractor until he has previously, before the suit, shown that all obligations of his to laborers and material men under the subcontract have been paid or adjusted. So, until that is done, I cannot see where there was any legal obligation on the part of Mr. Schewe to pay this $800. While I recognize the fact that the act provides that this protection goes to the material men and laborers, up to the amount of the original contract price, and not in excess of it—in other words, that a man shall not pay more for his building or for a public building than the contract he has entered into; at the same time I cannot believe that it was the intent of the legislature to allow payments to be made so carelessly as evidently this one was, without any inquiry as to whether or not these men had been paid. It has been shown in this case that Mr. Schewe would have to pay more for this excavation than the original contract called for; but I cannot believe, under the circumstances, that the law would contemplate that he is entitled to have the credit for $800 paid without any inquiry as to whether or not the other men had been settled with before this was done. Therefore, under the circumstances, it becomes my plain duty as I see it, to direct you to return in each of these cases a verdict in favor of the plaintiff. Your verdict in favor of Mr. Tavolieri will be in the sum of $169.32, in favor of Mr. Bostinelli in the sum of $354.07 and in favor of Mr. Garbino of $69.32."

Finding no reversible error in the record, the judgments entered in the court below are affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.