J ALTMAN COMPANIES, INC v SAGINAW PLUMBING AND
HEATING SUPPLY COMPANY

1. MECHANICS' LIENS—KNOWLEDGE OF CLAIM—DIRECT DEALING—EX-
CEPTION.

The knowledge of potential or existent claims gained by an owner
from dealing directly with subcontractors, laborers, and materi-
almen constitutes an exception to strict compliance with the
statutory provisions for serving a notice of lien on the owner as
a condition precedent for attachment of an enforceable me-
chanics' lien (MCLA 570.1).

2. MECHANICS' LIENS—KNOWLEDGE—IMPUTATION—CONTRACTUAL RE-
LATIONSHIP.

Knowledge of a claim made by a party attempting to perfect a
mechanic's lien cannot be imputed to a property owner, even
where the general contractor is assumed to be the alter ego of
the owner, where the contractual relationship of the claiming
party flowed only to a subcontractor independent of the prop-
erty owner or the general contractor.

3. MECHANICS' LIENS—CLAIMS—ITEMIZED STATEMENT—KNOWLEDGE.

The statutory requirement that the general contractor submit to
the owner an itemized statement of the number and names of
every subcontractor, laborer, and materialman on the job pro-
vides the owner with knowledge of potential claims only, not
actual knowledge of claims, which is given by the procedure
specified elsewhere in the act (MCLA 570.1, 570.4).

Appeal from Ingham, Donald L. Reisig, J. Sub-
mitted Division 2 June 9, 1972, at Lansing. (Docket
No. 11455.) Decided September 26, 1972.

Complaint by J. Altman Companies, Inc.,
against Saginaw Plumbing and Heating Supply
Company to quiet title to certain property. Altman

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 53 Am Jur 2d, Mechanics' Liens § 233.

Construction Corporation joined as a third-party defendant. Summary judgment for plaintiff. Original defendant appeals. Affirmed.

*Snyder, Loomis, Ewert, Ederer & Parsley* (by *Jack C. Davis),* for plaintiff.

*Maurice Black,* for defendant.

Before: BRONSON, P. J., and DANHOF and VAN VALKENBURG,* JJ.

BRONSON, P. J. J. Altman Companies, Inc., plaintiff, filed an action in the circuit court to quiet title of certain property. Saginaw Plumbing and Heating Supply Company defended this action, claiming the attachment of an enforceable mechanics' lien. MCLA 570.1 *et seq.;* MSA 26.281 *et seq.* Plaintiff filed a motion for summary judgment, which was granted by the trial judge. Defendant appeals.

The facts of the present case are essentially undisputed. Plaintiff is the owner of a piece of property on which a 155-unit apartment complex was built. Plaintiff contracted with Altman Construction Corporation (the general contractor) for the construction of this facility. The general contractor subcontracted the plumbing work for this project to the Newberry Plumbing & Heating Supply Company, which in turn hired defendant to supply the necessary plumbing materials.

Pursuant to these contractual relationships, defendant began supplying plumbing material to the apartment project on August 27, 1969. Subsequently, the Newberry Plumbing & Heating Supply Company became insolvent, causing defendant

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

concern about receiving payment for the materials previously delivered. Defendant attempted to seek security for this outstanding debt by filing a notice of intention to claim a mechanic's lien on July 21, 1970, some 11 months after the first materials were furnished. Plaintiff responded by filing an action to quiet title in the Ingham County Circuit Court. Thereafter defendant joined the general contractor as a third-party defendant and plaintiff filed a motion for summary judgment. During the hearing upon plaintiff's motion, defendant conceded that his notice of lien was not timely filed within the 60-day limitation and proof of service was not recorded as required by the statute. However, defendant contended that this noncompliance was excused because the owner had actual knowledge of his claim. This argument was predicated upon an allegation that since the general contractor was the alter ego of the owner, its knowledge was imputed to the owner. Plaintiff accepted, for purposes of argument on the motion only, that the owner and general contractor were the same organization, consisting of the same officers and directors. Plaintiff followed this approach believing that there were no currently recognized exceptions to strict compliance with the procedural prerequisites of the statute.

The trial judge accepted plaintiff's argument and granted summary judgment in its favor. Defendant appeals this decision upon the basis that strict compliance with the procedural requirements of the mechanics' lien act is excused when the owner either (1) "deals directly" with the materialman or (2) possesses actual knowledge of its claim. Defendant's contention of "direct dealing" is raised for the first time on this appeal. Since the failure to raise the issue before the trial judge precluded the

necessary findings of fact, it was dismissed from the present appeal by an order of this Court entered February 23, 1972.

Defendant's second contention is merely an astute recharacterization of the first. The nature of defendant's alleged exception depends exclusively upon the existence of knowledge on the part of the owner. Little difference can be perceived between imputing such knowledge to the owner by finding "direct dealing" and recognizing the existence of such knowledge when gained by another source. Upon the facts before us, knowledge can only be attributed to the plaintiff by the alleged coexistent identity of the owner and general contractor. This single vehicle for imputing knowledge to the plaintiff depends upon the same evidence and testimony regardless of the theory employed. Thus, defendant's attempted recharacterization fails upon the present record to raise a substantively distinct theory and would be controlled by our ruling upon the claim of "direct dealing". The entire appeal would be dismissed and remanded for the necessary findings of fact but for the trial court's ruling that no exceptions to strict compliance with the statute are currently recognized. We cannot agree that this constitutes a correct statement of law.

The standard for construing the mechanics' lien act was set forth in *Smalley v Northwestern Terra-Cotta Co,* 113 Mich 141, 148 (1897). Therein the Court enunciated the governing rule by citation to hornbook authority as follows:

" 'Mechanics' liens are in derogation of the common law, depending for their existence wholly upon statutes, and therefore, *upon the question whether a lien attaches at all, a strict construction is proper.'*

"Section 1556 of the same author reads:

" '*But, after the lien has once attached, a liberal*

*construction should be put upon the statute,* for the purpose of fulfilling its objects. * * * ' " (Emphasis added.)

Thus, a distinction was drawn between the construction of the statute for purposes of attachment and enforcement. The statute is to receive a strict construction until the lien attaches and once it attaches, a liberal construction to fulfill its remedial character. This approach was recently reaffirmed by the Court in *Wallich Lumber Co v Golds,* 375 Mich 323, 326 (1965).[1]

Compliance with the procedural provisions of the act were generally interpreted liberally prior to 1929. This approach was predicated upon the holdings of the early courts that several procedural requirements fell into the latter category of enforcement and were not conditions precedent to the attachment of a lien.[2] In this manner the purpose of the act to protect subcontractors, laborers, and materialmen was fulfilled.[3] It is not necessary to detail the distinctions between these early cases or define the limitations of their holdings. This body of case law was substantially modified in 1929 when the mechanics' lien act was amended as follows:

---

[1] This Court's acceptance of such a two-fold construction of the act is implicitly found in *Vorrath v Garrelts,* 35 Mich App 463 (1971).

[2] The following cases sustained liens despite the failure to completely comply with the statutory procedures: *Smalley v Northwestern Terra-Cotta Co,* 113 Mich 141 (1897) (failure to file a proof of service of notice upon the owner); *Smalley v Ashland Brown-Stone Co,* 114 Mich 104 (1897) (failure to serve a notice of intention to claim a lien); *Green Bay Cut Stone Co v Fabry,* 169 Mich 544 (1912) (failure to serve a notice of intention to claim a lien); *Netting Co v Berke,* 243 Mich 81 (1928) (failure to serve a notice of intention to claim a lien); *Kleinert v Knoop,* 147 Mich 387 (1907) (described petitioners are Furstenberg Bros. rather than by their individual names); *Vander Horst v Kalamazoo Apartments Corp,* 239 Mich 593 (1927) (failure to file a notice of *lis pendens).*

[3] *Smalley v Gearing,* 121 Mich 190 (1899); *Smalley v Ashland Brown-Stone Co, supra; Green Bay Cut Stone Co v Fabry, supra.*

"No person shall have a right to claim a lien as in this act provided, *unless and until* he shall have *served a notice* as in this section provided, and *proof of service of such notice* shall be attached to the verified statement or account when filed with the registrar of deeds as provided in section five [5] of this act." (Emphasis added.) 1929 CL 13101.[4]

The effect of this language was considered in *Webster v Cooper Development Co,* 266 Mich 505, 507 (1934), where a lien was challenged for failure to comply with the statute by filing a proof of service. Therein the Court found this error fatal stating:

"Compliance with this provision of the act is a condition precedent to the acquisition of the lien. The question here is not one of the construction of a statute, it is a question of compliance. There was no compliance with this provision of the statute. No mechanic's lien attached, and not having attached, there was no lien to foreclose."[5]

This statement by the *Webster* Court indicates that the 1929 amendment makes the procedural requirements named therein mandatory. Failure to serve a notice of intent to claim a lien or file proof of service of such notice is fatal to the creation of a mechanic's lien. These procedures, not viewed as conditions precedent to the attachment of a lien by case law prior to 1929, have been transformed into such by the 1929 amendment.

---

[4] Currently MCLA 570.1; MSA 56.281.

[5] *Cf, Wyoming Park Lumber & Fuel Co v Vander Ark,* 291 Mich 496 (1939) (failure to file a notice with the owner deemed fatal to creation of a lien); *Droulard v Czerwinski,* 367 Mich 557 (1962) (failure to file verified statement or account within 60 days pursuant to § 5 of the act deemed fatal to creation of a lien). *Compare, Wallich Lumber Co v Golds,* 375 Mich 323 (1965) (failure to file notice of *lis pendens* not deemed fatal to creation of lien when notice thereof was received).

Although the standard for construing the statute has not changed, this amendment requires us to "strictly" construe compliance with its provisions and ignore the liberal construction of these provisions permitted prior to 1929.

Upon this background, we review the exception urged by defendant. In *Saginaw Lumber Co v Stirling*, 305 Mich 473 (1943), the Court was confronted with facts in which a notice of lien had been served upon an owner-husband and read by both the husband and wife although neither signed the return receipt for the registered letter. The Court rejected a claim that both the owners, husband and wife, had not been served, finding that they possessed actual knowledge. This case indicates that knowledge on the part of the owner may constitute an exception to strict compliance with the statute. This approach was likewise recognized by the Court in *Mielis v Everts*, 264 Mich 363, 364 (1933), under the label "direct dealing". The *Mielis* Court sustained the claimants' lien despite their failure to serve the owner with a notice of an intention to claim a lien finding such unnecessary where they were dealing with the part-owner and not a contractor. The Court in *Wallich Lumber Co v Golds, supra,* cited the *Mielis* case with approval stating, at pp 328–329:

"The reason for the notice requirement and the distinction between one who deals directly with the owner and a subcontractor, materialman, or laborer who does not, is that in the first situation the owner knows there is a claim against him, but in the second case he may be unaware of a claim without such notice. The notice is for the purpose of protecting the owner. * * * "

The knowledge of potential or existent claims gained by owners from "dealing directly" with subcontractors, laborers, and materialmen clearly

constitutes an exception to compliance with the act.

The trial judge failed to recognize this exception because of an attempt to comply precisely with the proposition that the statute be "strictly" construed. Compliance with the statute's procedural provisions requires the performance of a useless act when such imparts nothing to the owners not already known. The purpose of this statute would be undermined if the owners were permitted to use the procedural safeguards designed for their benefit as a sword to smite known claims for liens. We find this exception to the statute sound and that the lower court erred by granting summary judgment in the absence of its consideration.

Our decision does not require a remand to provide the trial court with an opportunity to evaluate defendant's allegation of knowledge since we find that such is negated as a matter of law. Defendant neither contracted directly with plaintiff nor with the general contractor. Defendant's sole contractual relationship was with Newberry Plumbing & Heating Supply Company, a subcontractor. An allegation analogous to defendant's based upon the inter-locking directorates of the corporations involved was considered in *Sadler v Winshall,* 373 Mich 378 (1964). Unlike the present case, the contractual relationships in *Sadler* flowed directly between the alleged owners and the claimants for a mechanic's lien. Since defendant's contractual relationship flowed only to a subcontractor independent of plaintiff or the general contractor, this case fails to support defendant's contention.

We are not unmindful of § 4 of the act which requires the general contractor to submit to the owner an itemized statement of the number and

names of every subcontractor, laborer, or material-man on the job. Assuming the general contractor and owner to be the same entity, this section conveys no knowledge of actual claims. The purpose of this section is to provide the owner with a vehicle to guarantee payment to subcontractors, laborers, and materialmen for known claims. This section becomes meaningful only after the owner is given notice of claims pursuant to § 1 of the act and provides no secondary method of conveying such actual notice. The presence of subcontractors, laborers, or materialmen on the job revealed by this section is limited to providing knowledge of a potential claim. Charging an owner with actual knowledge via potential claims surely violates the purpose of the act. Since the procedural compliance with this statute is "strictly" construed, we refuse to extend the scope of the exception urged upon us.

The construction industry is dependent on a consistent and reliable payment structure. A holding that the notice provisions of § 1 of the act are excused solely because the general contractor is the owner would disrupt the industry and render the statute ineffective. Defendant's failure to fall within the statutory exception requires an affirmance of the lower court's entry of summary judgment for plaintiff.

Affirmed.

All concurred.